IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Nos. 7:04-cr-00066-001 |
| v. ) | 7:94-cr-00137-002 |
| ) | |
| MARCUS LAMONT SUMBLIN ) | By:  Elizabeth K. Dillon |
| ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER DENYING COMPASSIONATE RELEASE**

On August 20, 2020, defendant Marcus Lamont Sumblin filed a *pro se* motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i).  (Dkt. No. 185, Case No. 7:04-cr-00066.)[1]  In accordance with local Standing Order 2019-1, the court appointed the Federal Public Defender (FPD) to represent Sumblin (Dkt. No. 186), and the FPD supplemented Sumblin's motion (Dkt. No. 190).  The government opposes Sumblin's compassionate release.  (Dkt. No. 196.)  Thereafter, Sumblin filed additional motions regarding compassionate release, noting the increase in COVID-19 cases in the prison where he is located (Dkt. No. 201, 207), and he filed multiple documents with the court to provide additional evidence regarding his case.  (Dkt. Nos. 202, 203, 204, 206.)  Recently, the court held a telephonic hearing to obtain more current information on Sumblin's motions.  (Dkt. No. 209.)  At the hearing, defense counsel provided the court with additional evidence regarding Sumblin's health and the status of COVID-19 in the Bureau of Prisons (BOP).  (Dkt. No. 210.)  For the reasons stated below, the court will deny Sumblin's motions.

---

[1] As requested at the hearing and without objection from the United States, the court considers the motions for compassionate release as filed in both cases 7:04-cr-00066 and 7:94-cr-00137.  Unless otherwise noted, all references to docket numbers are in Case No. 7:04-cr-00066.

1

I.  BACKGROUND

Sumblin is 52 years old and has served over 86% of his sentence.  (Dkt. No. 190, Exhibit 1.)  His projected release date is February 28, 2023, on the conspiracy conviction and September 18, 2025, on the supervised release violation.  (*Id.*)  He is eligible for home detention on March 18, 2025.  (*Id.*)  Sumblin is being held at Federal Correctional Institution (FCI) Allenwood Medium in White Deer, Pennsylvania.

Sumblin seeks compassionate release because he has multiple health conditions that make him susceptible to COVID-19.  (Dkt. No. 190, Exhibit 2 – BOP medical records.)  He suffers from Stage III kidney disease, asthma, and obesity.  During the April 13, 2021 hearing, Sumblin informed the court that he has already contracted COVID-19 once while incarcerated, and he has recovered.  While he has been offered a COVID-19 vaccine, he declined because of his many health conditions.

The government does not dispute that Sumblin's health conditions constitute extraordinary and compelling reasons for compassionate release.  (Dkt. No. 196 at 2.)  However, the government opposes Sumblin's motion on the grounds that the factors set forth in 18 U.S.C. § 3553(a) weigh against release.

On September 15, 2005, Sumblin pled guilty to one count of conspiracy to distribute one kilogram or more of a mixture containing heroin and one count of possession of a firearm by a convicted felon.  (Plea Agreement, Dkt. No. 117.)  Sumblin transported heroin to the Roanoke area and carried firearms during this drug trafficking conspiracy which lasted over two years.  Pursuant to the plea agreement, other charges regarding drug trafficking resulting in death or serious injury and using firearms in relation to a drug trafficking crime were dismissed.  On January 31, 2006, the court sentenced Sumblin to 324 months imprisonment and 120 months of

supervised release, plus a consecutive 36 months imprisonment for his violation of supervised release in another case. (J., Dkt. No. 151, Case No. 7:04-cr-00066; Dkt. No. 73, Case No. 7:94-cr-00137.) On September 28, 2015, the court reduced Sumblin's drug conspiracy sentence to 262 months pursuant to Amendment 782 to the Sentencing Guidelines. (Dkt. No. 183.)

The Presentence Investigation Report (PSR), adopted by the court, found Sumblin responsible for not more than 1 kilogram of heroin, and his offense level was enhanced for possession of a dangerous weapon and his role as a manger or supervisor in the drug offense. (Dkt. No. 189 at ¶ 5, 24.) He was also found to be a career offender with a total offense level of 36 and a criminal history category of VI. (*Id.* ¶ at 40, 54.)

As summarized in the PSR, Sumblin and his co-conspirators transported heroin from New Jersey to Roanoke, Virginia, from June 2002 through August 2004, and distributed heroin. (*Id.* at ¶ 8–22.) Sumblin was said by many witnesses to have carried firearms during his drug trafficking activities. (*Id.* at ¶ 10, 12, 19.) Witnesses also recounted that he made many threats to others. (*Id.* at ¶ 9.) He threatened to shoot an individual in a dispute over missing money and heroin. (*Id.*) He threatened to burn down the home of another individual over an unpaid drug debt. (*Id.*) In September 2002, Sumblin provided the heroin that ultimately resulted in the overdose death of Monroe McNair. (*Id.* at ¶ 11.) When he learned of McNair's death, Sumblin stated, "The bastard needed to die, he messed up the money." (*Id.*) He then informed the newly widowed Mrs. McNair of her husband's overdose and watched her children while removing heroin and money from the McNair house. (*Id.*) When officers attempted to arrest Sumblin on May 17, 2004, he eluded them by driving at excessive speeds and crossing through intersections without stopping. (*Id.* at ¶ 20.)

Not surprisingly, given his status as a career offender, Sumblin has an extensive criminal history, beginning when he was a juvenile. His drug and gun history dates to 1987, and his drug convictions regularly continued despite being under criminal justice sentences. (*Id.* at ¶ 41–49.)

Sumblin notes in his briefing that many of his prior drug convictions were related to his own drug addiction and that he has had very little disciplinary trouble while incarcerated. He contends that he does not pose a threat to the public. Sumblin also cites his efforts towards rehabilitation, including completion of the drug abuse education program and many vocational certifications he has earned in prison. If released, Sumblin plans to live with his sister in Hampton, Virginia.

A review of his prison record indicates that the Bureau of Prisons categorizes him as having a high risk of recidivism as well as a medium security risk while incarcerated. (Dkt. No. 196, Exhibit A – BOP Inmate Profile.) His disciplinary records show that he has been sanctioned for numerous offenses while incarcerated, including assault and destroying property (2016), possession of gambling paraphernalia (2009), using another inmate's telephone account to communicate with others and giving and accepting money without authorization (2000). (Dkt. No. 196, Exhibit B - Inmate Disciplinary Data.)

## II. ANALYSIS

### A. Compassionate Release

United States Code Title 18, Section 3582(c)(1)(A), as amended by the First Step Act and in pertinent part, provides that the court may not modify a term of imprisonment once it has been imposed except that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse

>of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that –
>
>(i) extraordinary and compelling reasons warrant such a reduction . . . .

In addition to satisfying the above, the reduction must be "consistent with [the] applicable policy statement issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). However, "the Commission has yet to issue a policy statement that applies to motions filed by defendants under the recently amended § 3582(c)(1)(A)." *United States v. Burnell*, 837 F. App'x. 223, 224 (4th Cir. 2021) (quoting *United States v. McCoy*, 981 F.3d 271, 280–83 (4th Cir. 2020)). Therefore, a court may "consider *any* extraordinary and compelling reason for release that a defendant might raise." *Id.*

"A defendant seeking compassionate release has the burden of establishing that such relief is warranted." *United States v. Ferguson,* No. 515CR00018KDBDSC1, 2020 WL 5300874, at *2 (W.D.N.C. Sept. 4, 2020). Compassionate release is "an extraordinary and rare event." *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019). Rehabilitation, standing alone, "shall not be considered an extraordinary and compelling reason" for a sentence modification. 28 U.S.C. § 994(t).

**B. Exhaustion**

While the First Step Act modified § 3582(c)(1)(A) to allow a prisoner to bring a motion on his or her own behalf, the statute still includes an exhaustion requirement. The court has previously found that § 3582's exhaustion requirement is not a jurisdictional bar, but rather a claims-processing rule that may be waived. *See United States v. Brown*, Criminal No. 7:19-cr-

00036, 2020 WL 4506798, at *3 (W.D. Va. Aug. 5, 2020). Here, the government does not contest that Sumblin exhausted his administrative remedies within the Bureau of Prisons (BOP). (Dkt. No. 196 at 4.) Therefore, the exhaustion requirement does not stand in the way of granting Sumblin relief.

**C. Extraordinary and Compelling Reasons**

"In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [their] prison facility." *United States v. Harper*, No. 7:18-cr-00025, 2020 WL 2046381, at *3 (W.D. Va. Apr. 28, 2020) (citing *United States v. Feiling*, Criminal No. 3:19cr112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020); *United States v. Dungee*, Case No. 7:15cr00005, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020)).

Sumblin argues he has a particularized susceptibility to COVID-19 because he is obese, has asthma, and suffers from Stage III kidney disease. Sumblin cites multiple cases in which courts have found extraordinary and compelling reasons for compassionate release when a defendant has chronic kidney disease. (Dkt. No. 190 at 7 n.5, Case No. 7:04-cr-00066.) Generally, an inmate with chronic kidney disease has a particularized susceptibility to COVID-19, especially when combined with other underlying conditions. *See United States v. Johnson*, No. CR 4:16-577-BHH-1, 2020 WL 4501513, at *5 (D.S.C. Aug. 5, 2020). The CDC has identified chronic kidney disease and obesity as conditions that create an increased risk factor for severe illness from COVID-19 and asthma as a condition that might be a risk factor. *See* Centers for Disease Control and Prevention, *People with Certain Medical Conditions*,

6

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 19, 2021).

However, the CDC has also stated that "reinfection with the virus that causes COVID-19 is uncommon in the months after initial infection, but may increase with time." *See* Centers for Disease Control and Prevention, *Benefits of Getting a COVID-19 Vaccine*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited April 14, 2021). According to the National Institutes of Health, "[t]he immune systems of more than 95% of people who recovered from COVID-19 had durable memories of the virus up to eight months after infection." Sharon Reynolds, *Lasting Immunity Found After Recover of COVID-19*, NIH Research Matters (January 26, 2021) https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19.

Here, Sumblin's combination of obesity, asthma, and Stage III kidney disease would ordinarily make him particularly susceptible to COVID-19. However, Sumblin has already contracted and recovered from COVID-19, which means he likely has some level of natural immunity. Therefore, Sumblin is not particularly susceptible to COVID-19 in the near future.

In addition, Sumblin does not have a particularized risk of contracting COVID-19 again in prison. Allenwood Medium has struggled with a COVID-19 outbreak in the past; however, there are currently no COVID-positive inmates and only one COVID-positive staff member at the facility. *See* Bureau of Prisons, *Covid-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 13, 2021). Moreover, Sumblin and other inmates at Allenwood have been offered the COVID-19 vaccine which may reduce the number of COVID-19 cases in the prison moving forward. To date, 981 inmates at Allenwood FCC have been fully vaccinated against COVID-19. Bureau of Prisons, *COVID-19 Vaccine*

*Implementation*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited April 14, 2021). While the court recognizes the possibility of contracting COVID 19 a second time or after being vaccinated, those risks appear to be small. National Institutes of Health, *SARS-CoV-2 Antibodies Protect From Reinfection*, NIH Research Matters (March 2, 2021) https://www.nih.gov/news-events/nih-research-matters/sars-cov-2-antibodies-protect-reinfection; Mark G. Thompson et al., *Interim Estimates of Vaccine Effectiveness of BNT162b2 and mRNA-1273 COVID-19 Vaccines in Preventing SARS-CoV-2 Infection Among Health Care Personnel, First Responders, and Other Essential and Frontline Workers*, Centers for Disease Control and Prevention (April 2, 2021) https://www.cdc.gov/mmwr/volumes/70/wr/mm7013e3.htm?s_cid=mm7013e3_w#suggestedcitation. Therefore, Sumblin does not have a particularized risk of contracting the virus at this prison and has not shown an extraordinary and compelling reason for compassionate release.

**D. Section 3553(a) Factors**

Even if Sumblin had shown extraordinary and compelling reasons for compassionate release, the 3553(a) factors weigh against granting his release. A court must consider the factors set forth in section 3553(a) when determining whether an individual is eligible for release under the First Step Act. 18 U.S.C. § 3582(c)(1)(A). These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner; and the need to avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a). The court considers these factors holistically, and no one factor is dispositive. *United States v. Kibble*, No. 20-7009, 2021 WL 1216543 at *4 (4th Cir. April 1, 2021.)

Here, the § 3553(a) factors do not support Sumblin's motion for compassionate release. Sumblin's criminal conduct involved a drug trafficking conspiracy that was dangerous to the community and continued for at least two years. Sumblin carried a firearm during his criminal conduct and made violent threats to various individuals. Sumblin showed no remorse when an individual to whom he provided drugs died by overdose. In addition, Sumblin is a career offender with a long criminal history. He fled officers upon his arrest for this offense and has previously violated the terms of his supervised release. He has had multiple disciplinary infractions while in prison, with the last incident in 2016. The court recognizes Sumblin's efforts towards rehabilitation, including his completion of the drug abuse education program and many vocational certifications. However, the nature and circumstances of Sumblin's offense, his criminal history and characteristics, and the need to promote respect for the law and protect the public all weigh against granting his motion for compassionate release.

### III.  CONCLUSION

For the reasons stated above, it is hereby ORDERED that Sumblin's motions for compassionate release (Dkt. Nos. 185, 190, 201) are DENIED. The clerk is directed to provide a copy of this order to the defendant, all counsel of record, and the United States Probation Office.

Entered: April 15, 2021.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge